IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WANG & GAO FAMILY TRUST, et al.,

Plaintiffs,

v.

TA PARTNERS LLC, et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-2446-TWT

## OPINION AND ORDER

This is a RICO case arising out of the Plaintiffs' investment in a real estate venture. It is before the Court on Plaintiffs' Motion for Alternative Service [Doc. 33]; Defendant Giant Tiger LLC's ("Giant Tiger") Motion to Dismiss [Doc. 40] and Motion for Reconsideration [Doc. 77]; Defendants TA Partners, LLC ("TA Partners"), Chienshen (Johnny) Lu's, and Yaojun (Larry) Liu's Motion to Dismiss [Doc. 42]; and Defendants Xin Zheng and Hsing-Wen Ho's Motion to Dismiss [Doc. 43]. For the reasons set forth below, Plaintiffs' Motion for Alternative Service [Doc. 33] is DENIED. Defendant Giant Tiger's Motion to Dismiss [Doc. 40] is GRANTED, and its Motion for Reconsideration [Doc. 77] is DENIED as moot. Defendants TA Partners, Lu, and Liu's Motion to Dismiss [Doc. 42] is DENIED as moot. Defendants Zheng and Ho's Motion to Dismiss [Doc. 43] is DENIED as moot.

# I.  Background[1]

The Plaintiffs in this case allege that they were induced by the Defendants to invest in a fraudulent investment scheme. There are fifteen Plaintiff investors: Wang & Gao Family Trust, Lingyun Gu, Jingbo Xiao, Weimin Ren, Yuan Zhang, Hongshan Chen, WG Investment ATL LLC, PioneerSoft LLC, Yong Men, Shenxiong Zhou, Ning Zhang, Weijie Deng, Qianqian Wang, Xuejun Liu, and Qingyu Xue. The Defendants include a web of various individuals and entities, which are described below.

The alleged investment scheme involved real property located at 6055 West Center Drive in Los Angeles, California (the "Property"). (Am. Compl. ¶ 4.) In 2018, Defendant TA Partners Apartment Fund II LLC ("TA Fund II") purchased the Property for $10.8 million. (*Id.* ¶ 69.) TA Fund II is managed by Defendant TA Partners LLC ("TA Partners"). The Defendants Chienshen (Johnny) Lu and Yaojun (Larry) Liu are managing members of TA Partners. (*Id.* ¶¶ 2–3, 70.) According to the Amended Complaint, Lu and Liu sought to develop the Property into an apartment building, which they named the "Casa Playa Apartment Project." (*See id.* ¶ 69.)

To raise funds for the project, Defendant Giant Tiger, acting through Renkai (Richard) Zhang, sent project promotional materials to fellow alumni

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present motions to dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

of the Renmin University of China—of which Lu and Liu were also alumni—in March 2021. (*Id.* ¶¶ 75–76, 63.) Investors contributed their funds to an LLC called RUC14 Playa LLC ("RUC14"), which was formed and managed solely by Zhang, and subsequently became members of RUC14. (*Id.* ¶¶ 56, 74; Am. Compl., Ex. A ("RUC14 Operating Agreement") ¶¶ 2.1, 2.3 [Doc. 34-1].) The total contribution into RUC14 was $12,900,000, including $3,450,000 from the named Plaintiffs. (Am. Compl. ¶ 74.) RUC14's stated purpose was to "join [TA Fund II] as a member to participate in the ownership of the company, which company's sole purpose is to purchase, hold, develop, lease, operate and/or sell" the Property. (RUC14 Operating Agreement ¶ 1.5; *see also* Am. Compl., Ex. C ¶ 2.2 [Doc. 34-3] (describing the purpose of TA Fund II in that company's separate operating agreement).) RUC14's funds were invested into TA Fund II later that March. (Am. Compl. ¶ 80.)

Beginning in 2019, Larry Liu and Johnny Lu began misappropriating funds allocated for the Playa Project. Specifically, starting in June 2019, Larry Liu and Johnny Lu—through TA Partners—began taking out a series of loans on the Property and using the proceeds of those loans for unrelated business ventures and personal expenditures, without authority and without informing any other investors. (*See* Am. Compl. ¶¶ 71–72, 83, 85–86.) By March 2021, when RUC14 invested in the Playa Project, there was a $13,550,000 loan encumbering the Property. (*Id.* ¶ 72). Larry Liu and Johnny Lu refinanced this

loan two more times before the end of 2021, resulting in a $27,500,000 loan on the Property, and again used loan proceeds for unrelated business and personal expenses. (*Id.* ¶¶ 85–86). As Larry Liu later admitted, they did not disclose these loans. (*See id.*, Ex. I). In May 2021, Larry Liu and Johnny Lu improperly withdrew $9,400,000 in funds contributed by RUC14 investors—like Giant Tiger—from TA Fund II's bank. (*See id.*).

Ultimately, the Property was never developed into an apartment building, and there are no current plans to develop it into one. The Plaintiffs allege that Lu, Liu, and Zhang knew of yet failed to disclose material information about the Property to investors, including a $13.55 million loan on the Property. (*Id.* ¶¶ 11–12, 72–73, 76–78.) They also allege that Zhang received a $516,000 fundraising commission and $10,000 expense reimbursement unbeknownst to them. (*Id.* ¶ 7.) Once the funds were invested into TA Fund II, the RUC14 funds were then allegedly "misappropriated and laundered through other projects and diverted directly to personal accounts controlled by Johnny Lu and Larry Liu." (*Id.* ¶ 8.) Lu and Liu sent a letter to the investors admitting to misappropriating and diverting the investors' funds. (*See generally* Am. Compl., Ex. I.) Johnny Lu's wife, Defendant Hsing-Wen Ho, and Larry Liu's wife, Defendant Xin Zheng, were each sole members of additional entities that were allegedly formed to advance this fraudulent investment scheme and "conceal stolen funds and diverted loan proceeds."

4

(Am. Compl. ¶ 68.) The Plaintiffs additionally allege that this is not the Defendants' first sham investment scheme. The Defendants allegedly devised a nearly identical scheme concerning a separate property in Irvine, California; other LLCs known as TA Partners Apartment Fund III LLC and RUC13 Pistoria LLC; and similar misrepresentations, misappropriations, and laundering. (*Id.* ¶¶ 65–66.)

The Plaintiffs' Amended Complaint seeks relief on twelve counts against fourteen named Defendants: (1) violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act under 18 U.S.C. § 1962(c) against the "Enterprise Defendants" (TA Partners, TA Fund II, Johnny Lu, Larry Liu, Giant Tiger, and Zhang); (2) conspiracy to violate the RICO Act under 18 U.S.C. § 1962(d) against the Enterprise Defendants; (3) fraud and negligent misrepresentation against Zhang, Liu, Lu, and Giant Tiger; (4) breach of contract against TA Partners, Lu, Lui, ALFA IDG LLC, and Thriving Future LLC; (5) breach of contract against Zhang; (6) breach of fiduciary duty against Zhang; (7) removal of Zhang as manager of RUC14; (8) declaratory judgment against Varde Partners Inc. and VP Irvine Lender LLC; (9) breach of guaranty agreement against the Guarantor Defendants (TA Fund II, TA Partners, Lu, Liu, ALFA IDG LLC, and Thriving Future LLC); (10) fraudulent transfers against all Defendants and "Doe Defendants 1 through 50"; (11) Georgia RICO Act violations under O.C.G.A. § 16-14-4(a)–(c) against the Enterprise

Defendants; and (12) alter ego between Zhang and Giant Tiger.

Since filing their Amended Complaint, however, the Plaintiffs have voluntarily dismissed two groups of Defendants. They first dismissed Defendants Varde Partners Inc. and VP Irvine Lender LLC, VP Irvine Lender LLC [Docs. 50, 75–76]. More recently, the Court granted a joint motion by the Plaintiffs and Defendants TA Partners, Johnny Lu, Larry Liu, Xu Zheng, and Hsing-Wen Ho for the voluntary dismissal of those five consenting Defendants. (Order, Feb. 10, 2025 ("Feb. Order"), at 1 [Doc. 76].) Giant Tiger did not consent to the joint motion. (*See* Pls.' & Defs.' Joint Mot. to Dismiss, at 2 [Doc. 73].) The remaining named Defendants—Richard Zhang, ALFA IDG LLC, and Thriving Future LLC—have yet to be served process. And the Plaintiffs have expressed their intent to pursue this action against only Giant Tiger and Richard Zhang. (Pls.' & Defs.' Joint Mot. to Dismiss, at 2.)

Five motions are pending before this Court. The Plaintiffs filed a motion for alternative service [Doc. 33] as to Defendant Zhang. Three motions to dismiss are also pending: (1) one filed by Defendant Giant Tiger [Doc. 40] pursuant to Rule 12(b)(6), (2) one filed by Defendants TA Partners, Lu, and Liu [Doc. 42] pursuant to Rules 12(b)(6) and 12(b)(3), and (3) one filed by Zheng and Ho [Doc. 43] pursuant to Rules 12(b)(6), 12(e), and 12(b)(2). Lastly, Giant Tiger filed a motion to reconsider [Doc. 77] the Court's dismissal of Defendants TA Partners, Johnny Lu, Larry Liu, Xu Zheng, and Hsing-Wen Ho.

## II.    Legal Standard

Courts may authorize service of process for individuals residing outside the United States under Federal Rule of Civil Procedure 4(f)(3). That rule provides that courts may order service by "means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). In addition to complying with international law, any service authorized under Rule 4(f)(3) must still comport with constitutional due process. *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. 2012) (citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a

valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

Where a complaint alleges fraud, as here, it must additionally satisfy Rule 9(b)'s heightened pleading standard. Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement is often framed as the "who, what, when, where, and how" of the alleged fraud. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). And the requirement may be relaxed where evidence of the fraud is "uniquely held by the defendant." *Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1279 (N.D. Ga. 2024) (citations omitted); *see also Hill v. Morehouse Med. Assocs., Inc.*, 2003 WL 22019936, at *3–4 (noting, however, that the mere "difficulty" of obtaining information "as a corporate outsider [is] not sufficient to justify relaxing Rule 9(b)'s pleading standard" (citation omitted)).

### III.    Discussion

#### A. Motion for Alternative Service

Rule 4(f) governs service of process for individuals residing outside the United States. The parties agree Rule 4(f) applies to Richard Zhang, as he currently resides in China. (*See* Pls.' Mot. for Alt. Serv., at 5 [Doc. 33]; Def. Zhang's Resp. Br. in Opp'n to Pls.' Mot. for Alt. Serv., at 2, 7 [Doc. 38].) The Plaintiffs seek an order from this Court authorizing service to Zhang pursuant to Rule 4(f)(3), which provides that courts may order service by "means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). They specifically request service via (1) Giant Tiger's counsel or (2) an email address known to belong to Zhang. (Pls.' Mot. for Alt. Serv., at 7, 16.)

Zhang—who has not otherwise appeared in this case—asserts that the Motion must be denied because the Plaintiffs' requested methods of service violate the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Service Convention"). (Def. Zhang's Resp. Br. in Opp'n to Pls.' Mot. for Alt. Serv, at 11–16 (citing Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163).) The Plaintiffs respond that the Hague Service Convention does not apply, (*id.* at 12–13), and that their requested methods otherwise comport with due process and international law, (*id.* at 8–11, 13–

16). As explained below, the Court holds that the Hague Service Convention applies to the present case and prohibits the Plaintiffs' requested methods of service.

### 1. The Hague Service Convention Applies

The Hague Service Convention is an international treaty that "seeks to simplify, standardize, and generally improve the process of serving documents abroad" by "specifying certain approved methods of service and preempting 'inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 271 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)). Both the United States and China are signatories to the Convention.[2]  *See* Hague Conference on Private International Law, *Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 [https://perma.cc/ET45-PUKJ] (last visited Aug. 12, 2025). It authorizes three methods of service: (1) receipt through the foreign country's central authority (e.g., ministry of justice), Hague Service Convention arts. 2–6; (2) alternative methods such as through consular agents or "postal channels," *id.* arts. 8, 10;

---

[2] As Zhang points out, "that fact distinguishes this case from many of the cases that Plaintiffs rely on in their Motion," which "concern service in countries that are *not* signatories to the Hague Service Convention." (Def. Zhang's Resp. Br. in Opp'n to Pls.' Mot. for Alt. Serv., at 6.)

and (3) methods affirmatively authorized by the foreign country, *id.* arts. 11, 19.

The Convention applies to "all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 409 (N.D. Tex. 2020) (citing Hague Service Convention art. 1). But it does not apply "where the address of the person to be served with the document is not known." *Id.* (quoting Hague Service Convention art. 1). A defendant's address is "not known" unless the plaintiff made "reasonably diligent efforts to learn the defendant's mailing address" but failed. *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified in Sch. 'A,'* 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019) (collecting cases).

Here, the Plaintiffs argue that the Hague Service Convention does not apply because, despite their diligent efforts to locate Zhang's mailing address, the address is still unknown. (Pls.' Mot. for Alt. Serv., at 12–13.) The Plaintiffs note that they have searched for Zhang's address through general internet searches (including for Giant Tiger's website and Zhang's LinkedIn profile) and in their communications with him. (*Id.*) They also note that the RUC14 Operating Agreement "contains an address for Giant Tiger in Shanghai, China," but that "there is no way of confirming" whether Zhang resides there. (*Id.* at 13.) Zhang responds that the Plaintiffs' efforts to determine his address

11

are not "diligent" but "minimal." (*See* Def. Zhang's Resp. Br. in Opp'n to Pls.' Mot. for Alt. Serv., at 8; *see also id.* at 10 ("[T]he only reason Plaintiffs do not know Mr. Zhang's address is because they have not seriously attempted to learn it.").) He points out that the Plaintiffs could have hired an investigator, engaged someone in China to attempt service on the address in the RUC14 Operating Agreement, or asked Giant Tiger's counsel to confirm the address, among other things. (*See id.* at 9–10.) He further adds that he "is willing, contingent on the Plaintiffs' agreement to reasonable confidentiality protections, to disclose his China address to Plaintiffs' counsel." (*Id.* at 10.)

The Court agrees with Zhang that the Hague Service Convention applies and dictates the available methods of service. Although the Plaintiffs have searched internet pages and their communications with Zhang, more is required before this Court will deem Zhang's address unknown. For example, courts have found a party's address unknown after a "plaintiff hired an investigator in China to determine whether physical addresses" possibly associated with a defendant were correct. *See Luxottica*, 391 F. Supp. 3d at 824 (citing *Chanel, Inc. v. Song Xu*, 2010 WL 396357, at *1, *3 (W.D. Tenn. Jan. 27, 2010)); *see also BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005) (noting that the plaintiffs hired "an investigative firm in Pakistan" that searched (to no avail) "telephone records, utility records, property records, various housing authorizes' records, law enforcement records and other

personal identifying databases"). *But see Microsoft Corp. v Does*, 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012) (finding the Hague Convention inapplicable where the defendants—unlike Zhang here—concealed their identifies and locations with "sophisticated means," as they operated solely online via untraceable usernames).

Moreover, courts have rejected alternative service requests where a plaintiff was in a similar situation to the Plaintiffs here. For example, at least one court refused to grant alternative service where a plaintiff did not first ask counsel associated with a defendant for the appropriate address, as is the case here. *See Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) ("[A]lthough Progressive obviously knows the identity and address of Williams, the Andrews's Canadian counsel, there is no indication that it has asked him for their new address."); *see also Opella v. Rullan*, 2011 WL 2600707, at *6 (S.D. Fla. June 29, 2011) (finding that the plaintiff did not diligently exhaust avenues such as asking those connected to the defendant for an address). And other courts have rejected requests for alternative service where the plaintiffs did not first attempt service under the Hague Service Convention, as is also the case here. *See Blumedia, Inc. v. Sordid Ones BV*, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011) ("Even if Defendants are not in fact located at [the suspected address] . . ., authorities in the Netherlands may have information about Defendants that can be used

to effect traditional service."); *Harper v. W.W. Grainger, Inc.*, 2013 WL 2470751, at *4 (W.D. Ky. June 7, 2024) (allowing alternative service where the plaintiff first attempted to serve the defendant under the Hague Service Convention, with follow ups to the relevant country's central authority). It is not sufficient for the Plaintiffs to claim that service under the Hague Service Convention would be "more costly, frustrating, and time-consuming." (Pls.' Mot. for Alt. Serv., at 14.)

### 2. The Requested Service Methods Violate the Convention

Having determined that the Hague Service Convention governs the available methods of service, the Court now turns to whether the Convention prohibits Plaintiffs' requested methods. The Plaintiffs argue that the Convention does not prohibit service by email or local counsel, as the Convention does not expressly prohibit either.[3] (*Id.* at 13.)

The Court holds that the Plaintiffs' requested methods of service would violate the Hague Service Convention. As an initial matter, the Court is

---

[3] The Plaintiffs also suggest that, because time is of the essence, they need not attempt service under the Convention anyways. (*See* Pls.' Mot. for Alt. Serv., at 14–15 (arguing that attempting service under the Convention would allow Zhang to liquidate his assets and avoid "satisfy[ing] any future judgment").) However, they offer no authority for this contention, and the Court is not aware of any authority allowing service under similar circumstances. *See Tillotson Corp. v. Supermax Corp. Bhd.*, 2008 WL 11336243, at *3 (N.D. Ga. May 21, 2008) ("Permitting a plaintiff to circumvent the provisions of the Hague Convention even though it applies . . . is tantamount to permitting service that contravenes the Constitution." (citation omitted)).

persuaded by the body of case law finding that the Convention prohibits methods of service that it does not specifically authorize. *See Water Splash*, 581 U.S. at 271 (quoting *Schlunk*, 486 U.S. at 699) (finding that the Hague Service Convention "preempt[s] 'inconsistent methods of service wherever it applies'"); *see also, e.g.*, *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022) (rejected service methods not specifically authorized by the Convention or the foreign country, including service by email in China); *Prem Sales*, 494 F. Supp. 3d at 416–17 (same); *Facebook, Inc. v. 9 Xiu Network (Shenzen) Tech. Co.*, 480 F. Supp. 3d 977, 983–84 (N.D. Cal. 2020) (same); *Duong v. DDG BIM Servs. LLC*, 700 F. Supp. 3d 1088, 1093–95 (M.D. Fla. 2023) (same but regarding service in India). As mentioned above, the Convention authorizes service by the (1) "foreign country's central authority," (2) consular or "postal" channels, where the foreign country has not expressly prohibited such channels, and (3) other methods expressly authorized by the foreign country. Hague Service Convention arts. 2–8, 10–11, 19.

Here, China has objected to service via postal channels under the second option, *Prem Sales*, 494 F. Supp. 3d at 413, and has not otherwise expressly authorized service by email or local counsel under the third option. Service by email or local counsel is thus not among the methods specifically authorized by the Convention or China.[4] Accordingly, the Court denies the Plaintiffs' Motion

---

[4] A number of courts have independently construed China's objection to

for Alternative Service at this time.

## B. Motions to Dismiss

Prior to their dismissal from this case without prejudice, Defendants TA Partners, Johnny Lu, and Larry Liu filed a Motion to Dismiss on Rule 12(b)(6) and 12(b)(3) grounds, and Defendants Xu Zheng and Hsing-Wen Ho filed a Motion to Dismiss on Rule 12(b)(6), 12(e), and 12(b)(2) grounds. Now that these parties have been dismissed and terminated as parties to this action, the Court denies their Motions to Dismiss as moot. *See Simon Prop. Grp., L.P. v. Taylor*, 2021 WL 4432686, at *2 (11th Cir. Sept. 27, 2021) (noting without issue that the district court rendered a motion to dismiss moot after the movants were voluntarily dismissed from the case); *Chemence, Inc. v. Mac Dermid, Inc.*, 2006 WL 8433097, at *1 (N.D. Ga. Dec. 8, 2006) (denying a motion to dismiss as moot because the movant was voluntarily dismissed from the case).

The only remaining Motion to Dismiss was filed by Giant Tiger for failure to state a claim under Rule 12(b)(6).[5] As explained below, the Court

---

service by postal channels as extending to service by email. *See Prem Sales*, 494 F. Supp. 3d at 414 (collecting cases that have held such, though not expressly avowing or disavowing their reasoning). While this reasoning appears persuasive, the Court need not reach that same conclusion having found that the Convention nonetheless precludes service by email.

[5] As Giant Tiger points out, the Plaintiffs' response brief does not comply with Local Rule 7.1(D) because the brief is forty pages in length, far exceeding the twenty-five-page limit. LR 7.1(D), NDGa. Although the Plaintiffs did not move for permission to exceed the page limit, the Local Rules going forward.

grants dismissal as to Giant Tiger regarding alter ego (Count XII), fraud (Count III), federal RICO (Count I), fraudulent transfer (Count X), and Georgia RICO (Count XI but as to only O.C.G.A. § 16-14-4(a)–(b)). It denies dismissal as to Giant Tiger regarding federal RICO conspiracy (Count II) and Georgia RICO conspiracy (Count XI but as to only O.C.G.A. § 16-14-4(c)). Additionally, the Court notes that Plaintiffs' request for leave to amend is denied at this time, as the request was improperly presented in the Plaintiffs' response brief rather than through a motion pursuant to Rule 7(b).

### 1. Shotgun Pleading

Giant Tiger asks this Court to dismiss the Amended Complaint as an impermissible "shotgun pleading." (Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 9–10.) Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "shotgun pleading" is a pleading that violates this rule by failing "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted). Here, Giant Tiger argues that the Amended Complaint is a shotgun pleading because it (1) "contain[s] multiple counts where each count adopts the allegations of all preceding counts" and (2) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for

17

which acts or omissions, or which of the defendants the claim is brought against." (Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 10 (citing *Weiland*, 792 F.3d at 1321, 1323).) The Amended Complaint has all of the indicia of a shotgun pleading, including multiple counts adopting the allegations of all preceding counts and multiple claims against multiple Defendants (e.g., the "Enterprise Defendants") without specifying which of the Defendants are responsible for which acts or omissions. The problem is magnified by the fact that the Plaintiffs are now pursuing their clams against only two of the original Defendants. Nevertheless, in the interest of judicial economy, the Court will address the substantive claims against the remaining Defendant that has been served.

### 2. Defendants Richard Zhang and Giant Tiger as Alter Egos (Count XII)[6]

Corporations are distinct legal entities from their officers and shareholders. *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306 (1991). However, under Georgia's alter ego doctrine, a "corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused."

---

[6] The Court applies Georgia law to determine whether an alter ego exists, as federal courts look to the law of their forum state. *Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 861 (11th Cir. 2010) (per curiam); *see also Insituform Techs., LLC v. Cosmic TopHat, LLC*, 959 F. Supp. 2d 1335, 1344 (N.D. Ga. 2013) (applying Georgia's alter ego law despite the plaintiffs' claims arising under federal question jurisdiction). The parties do not dispute that Georgia law applies.

*Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (2005); *see also Factory Direct Wholesale, LLC v. Off. Kick, Inc.*, 2023 WL 6811026, at *3 (S.D. Ga. Oct. 16, 2023) (citation omitted) (noting that the alter ego doctrine applies to LLCs as well as corporations).

In the typical scenario, a creditor of the corporation seeks to "pierce the veil"—disregard the separation between the corporate entity and its shareholders—to reach *shareholders' assets*. *TMX Fin., LLC v. Goldsmith*, 352 Ga. App. 190, 210 (2019). In less typical "reverse piercing" scenarios, a corporate insider or third-party claimant seeks to pierce the veil to reach the *corporation's assets. In re Friedlander Cap. Mgmt. Corp.*, 411 B.R. 434, 441 n.2 (Bankr. S.D. Fla. 2009) (citing Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33, 36–37 (1990)). These scenarios are known as "insider reverse piercing" and "outsider reverse piercing," respectively. *See Acree v. McMahan*, 276 Ga. 880, 881 (2003) ("An increasing number of courts have recognized the distinction . . ."). This case and Motion to Dismiss concern outsider reverse piercing, as a third-party claimant (the Plaintiffs) seek to pierce the veil to reach a corporation's (Giant Tiger) assets based on a corporate insider's (Richard Zhang) acts and debts. *See id.* (citation omitted).

In briefing, Giant Tiger argues that it cannot be held liable for Richard Zhang's alleged misconduct since Georgia does not recognize outsider reverse

piercing. (Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 24 [Doc. 40-1] (citing *Acree*, 276 Ga. 880).) In rejecting the outsider reverse piercing theory, the Georgia Supreme Court reasoned in *Acree v. McMahan*, 276 Ga. 880 (2003), that allowing it "would constitute a radical change to the concept of piercing the corporate veil in this state." *Id.* at 882 (acknowledging critiques of outsider reverse piercing claims, including that they "bypass[ ] normal judgment-collection procedures" and "prejudice" corporate creditors and non-culpable shareholders (citation omitted)).

The Plaintiffs in response acknowledge Georgia's prohibition on outsider reverse piercing but argue that *Acree* "nonetheless made [an alter ego] theory available provided the traditional remedies [such as conversion and fraudulent conveyance] would be inadequate remedies at law." (Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 36 [Doc. 57] (citing *Acree*, 276 Ga. at 883).) They also point to *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190 (2019), as an example of a Georgia court "overrul[ing] a motion to dismiss against the plaintiff for failure to state a claim when alleging a reverse veil piercing theory." (Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 36 (citing *TMX Finance*, 352 Ga. App. at 211).)

Here, the Court concludes that the Plaintiffs cannot pursue an outsider reverse piercing theory. The Plaintiffs misread *Acree*; *Acree* did not create an outsider reverse piercing exception for when existing remedies are inadequate.

20

*Acree* rejected outsider reverse piercing altogether "*[b]ecause* existing remedies were adequate." *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 370 (2017) (emphasis added), *abrogated on other grounds by*, *Reid v. Morris*, 309 Ga. 230 (2020). As the Georgia Court of Appeals explained: "[*Acree's*] strong language rejecting [outsider] reverse piercing leaves no door open for an exception to exist. The [Georgia] Supreme Court firmly closed that door, and we are in no position to carve a hole in it." *Id.* (rejecting the exact argument that the Plaintiffs here make); *see also In re Webster*, 629 B.R. 654, 668 (Bankr. N.D. Ga. 2021) (viewing the issue as decided). The Plaintiffs also misread *TMX Finance*. There, the Georgia Court of Appeals held that the plaintiffs could not hold the TMX defendant companies liable for the misconduct of their sole officer under an *outsider reverse* veil-piercing theory but that the plaintiffs could hold the various TMX companies liable for each other's misconduct under a *standard* veil-piercing theory. *TMX Finance*, 352 Ga. App. at 211.

For these reasons, Giant Tiger's Motion to Dismiss is granted as to the Plaintiffs' attempt to hold Giant Tiger liable for Richard Zhang's alleged misconduct. *See Allen v. Loughery*, 2007 WL 9701239, at *5 (N.D. Ga. Mar. 23, 2007) (granting summary judgment under *Acree* since the plaintiffs sought to "hold the corporation liable for the actions of its officer"). This is so "even in the case of a single shareholder corporation that is allegedly an alter-ego or fraud."

21

*See In re Geer*, 522 B.R. 365, 393 (Bankr. N.D. Ga. 2014) (citing *Holiday Hosp. Franchising, Inc. v. Noons*, 324 Ga. App. 70, 71 (2013)) The Court will accordingly treat Giant Tiger and Richard Zhang as separate entities for purposes of this Motion to Dismiss.

### 3. Fraud & Negligent Misrepresentation (Count III)

In Georgia, fraud has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Meyer v. Waite*, 270 Ga. App. 255, 257 (2004) (citation omitted). Where a plaintiff alleges fraud by the omission of a material fact, the plaintiff must additionally allege a duty to disclose the omitted information. *Ledford v. Smith*, 274 Ga. App. 714, 721 (2005) ("[T]he 'suppression of a material fact is fraud only if there is a duty to disclose . . . .'" (citation omitted)). Here, the Plaintiffs allege that Giant Tiger and Richard Zhang made false representations and omitted material information to induce them to invest in the Property pursuant to the RUC14 Operating Agreement. (*See* Am. Compl. ¶¶ 75–78.) Giant Tiger seeks dismissal of the fraud claim for three reasons: (1) a "merger clause" in the RUC14 Operating Agreement[7] precludes any

---

[7] Giant Tiger notes in its opening brief that the RUC14 Operating Agreement also contains a mandatory mediation clause for disputes arising under the Agreement. (Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 18 n.5 (citing RUC14 Operating Agreement § 8.3).) While Giant Tiger suggests that this mediation has not occurred, it does not ask the Court to take any

justifiable reliance on noncontractual representations or omissions; (2) the Plaintiffs fail to allege a misrepresentation with particularity; and (3) the Plaintiffs fail to allege a duty to disclose that would support fraud by omission.

The Court agrees with Giant Tiger that the merger clause in the RUC14 Operating Agreement requires dismissal of this fraud claim. As an initial matter, it is undisputed that the Plaintiffs and Giant Tiger executed the RUC14 Operating Agreement. (Am. Compl. ¶ 169 (regarding the Plaintiffs' signatures); RUC14 Operating Agreement,[8] at 69 (regarding Giant Tiger's signature).) That Agreement contains the following merger clause: "This Agreement constitutes the entire agreement among the parties relative to the subject matter hereof, and supersedes all proposals, written or oral, and all other communications between the parties relating to the subject matter of this Agreement." (RUC14 Operating Agreement ¶ 8.1.)

Where a plaintiff affirms the validity of a contract containing a merger clause, the merger clause will typically "preclude[ ] any subsequent claim of deceit based upon pre-contractual representations." *Legacy Academy, Inc. v. Mamilove, LLC*, 297 Ga. 15, 19–20 (2015) (quoting *First Data POS, Inc. v. Willis*, 273 Ga. 792, 785 (2001)); *see also id.* at 17 (noting that, at the outset, a

---

action based on this information. (*Id.*) The Court therefore takes no action at this time.

    [8] Although it is not the case elsewhere, the page number in this instance reflects the PDF pagination of Exhibit A.

plaintiff may elect to either "affirm the contract and sue for damages from the fraud or breach" or "rescind the contract and sue in tort for fraud"). This rule recognizes that each party is expected to act with diligence in executing a contract, "mak[ing] use of his own facilities" and not "blindly rely[ing] upon the assurance" of another party. *Mgmt. Assistance, Inc. v. Comp. Dimensions, Inc.*, 546 F. Supp. 666, 672 (N.D. Ga. 1982) (citations omitted). In other words, a party cannot justifiably rely on noncontractual representations—a key element of fraud—where it "had equal and ample opportunity to prevent [the fraud] and yet made it possible through the failure to exercise due diligence." *C & C Fam. Tr. 04/04-05 ex rel. Cox-Ott v. AXA Equitable Life Ins. Co.*, 44 F. Supp. 3d 1247, 1259–60 (N.D. Ga. 2014) (quoting *Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 876 (1995)).

But that rule is subject to an exception: "the presence of a merger clause do[es] not generally bar a claim for fraud or negligent misrepresentation when 'one of the parties interfered with the *ability* of the other to ascertain the real nature of the bargain into which he was entering.'" *TTCP Energy Fin. Fund II, LLC v. Ralls Corp.*, 255 F. Supp. 3d 1285, 1290 (N.D. Ga. 2017) (quoting *Schlange-Schoeningen v. Parrish*, 767 F.2d 788, 793 (11th Cir. 1985)); *Sires v. Luke*, 544 F. Supp. 1155, 1165 (S.D. Ga. 1982) ("[T]his merger clause does not defeat the action where the fraud alleged to have been perpetrated was such as to prevent the purchaser from exercising his own judgment." (citing *Hester*

*v. Wilson*, 117 Ga. App. 435, 439 (1968))).

Here, the Plaintiffs affirm the validity of the RUC14 Operating Agreement,[9] (Am. Compl. ¶ 169), but suggest the merger clause is inapplicable under the exception, (*see* Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 26). The Plaintiffs contend that, despite their diligence, Richard Zhang "utilized the geographical distance and language barrier to control the Plaintiffs' funds and narrative about the status of the Playa Project." (*Id.* at 26; Am. Compl. ¶ 6 ("Zhang relied on the geographical distance and language barriers between investors and any investments in the US to create separation and relied on that lack of transparency to perpetuate his fraudulent scheme . . .").) They also allege that Zhang reached out to them because they were fellow alumni from Renmin University of China, (Am. Compl. ¶ 4), and that he "named the investment entities after the university to foster a false sense of trust from his fellow alumni," (*id.* ¶ 64).

Ultimately, the Court holds that the Plaintiffs are bound by the merger clause and cannot recover in tort for fraud. The Plaintiffs have not shown that they were *unable* to exercise due diligence in executing the RUC14 Operating Agreement. First, Georgia courts have found that limited English proficiency does not by itself prevent an individual from exercising diligence. *See Hwa Sun*

---

[9] In fact, the Plaintiffs are suing Richard Zhang for breach of the RUC14 Operating Agreement. (Am. Compl. ¶¶ 168–76.)

*Huh v. Chase Home Fin.*, 2010 WL 11597677, at *7 (N.D. Ga. Jan. 4, 2010); *Hwa Sun Huh v. Citibank, N.A.*, 2010 WL 11597474, at *4 (N.D. Ga. July 26, 2010). In *Hwa Sun Huh v. Chase Home Finance*, 2010 WL 11597677 (N.D. Ga. Jan. 4, 2010), for example, a court in this district dismissed a plaintiff's fraud claims because her limited English proficiency "d[id] not relieve her duty of diligence." *Id.* at *7 (noting that the plaintiff alleged she "[spoke]  and read 'very limited English'"). The court reasoned that the plaintiff does not allege she was prevented from relying on an interpreter, reading the documents, or otherwise taking reasonable care before executing the contracts. *Id.*; *see also Citibank*, 2010 WL 11597474, at *4 (noting that limited language proficiency does not create a "restraint on [ ] seeking a consultant or outside party to explain more fully the intricacies of the contract").

Second, there is no reason to think that geographical distance prevented the Plaintiffs from verifying any claims about the Property or proposed investment, though taking on such a task may present an inconvenience. And the Plaintiffs do not otherwise allege that the information needed to verify Giant Tiger's claims was impossible to obtain through ordinary diligence. *See West v. Bowser*, 365 Ga. App. 517, 520 (2022) ("[O]ne must exercise ordinary diligence in making an independent verification of contractual terms and representations, [as] failure to do [such] will bar an action based on fraud." (citation omitted)).

Lastly, while the existence of a confidential or special relationship between contracting parties may excuse the exercise of diligence, *id.* at 520, no such confidential or special relationship exists here. A confidential relationship arises where "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." *Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558, 562 (2022) (quoting O.C.G.A. § 23-2-58). That is a far cry from what the Plaintiffs allege here, which is a general sense of trust in their fellow college alumni. "[T]he mere circumstance that two people have come to repose a certain amount of trust and confidence in each other . . . is not, in and of itself, sufficient to find the existence of a confidential relationship." *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 330 (1999) (citation omitted).

For these reasons, the Court hereby dismisses the Plaintiffs' fraud and negligent misrepresentation claim (Count III) as to Defendant Giant Tiger. As Giant Tiger points out, the merger clause also affects the Plaintiffs' federal and state RICO claims (Counts I, II, XI). The Court discusses those below, as they are barred to the extent they are premised on justifiable reliance on Giant Tiger's noncontractual representations. *See Worsham v. Provident Cos., Inc.*, 249 F. Supp. 2d 1325, 1333 (N.D. Ga. 2002) (applying a merger clause to bar the plaintiff's RICO claims, which were premised on predicate acts (mail and

wire fraud) that required justifiable reliance); *Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank*, 2007 WL 4564133, at *8 (N.D. Ga. Dec. 20, 2007) (finding that a merger clause bars recovery under common law fraud, federal RICO, and Georgia RICO claims since those claims relied on predicate acts that required justifiable reliance on noncontractual representations).

### 4. Federal RICO (Count I)

To state a federal RICO claim in civil court under 18 U.S.C. § 1962(c), a plaintiff must allege that the defendant "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that includes at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Giant Tiger argues that the Amended Complaint fails to satisfy the enterprise, pattern, and predicate acts elements. The Court begins (and ends) its analysis with the predicate acts element, finding that each of the Plaintiffs' predicate acts fail as a matter of law as to Defendant Giant Tiger.

The Amended Complaint outlines seven predicate acts of racketeering: (1) securities fraud in violation of 18 U.S.C. § 78(r), (2) mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, (3) bank fraud in violation of 18 U.S.C. § 1344, (4) tax fraud in violation of 26 U.S.C. § 7434, (5) money laundering in violation of 18 U.S.C. § 1956, and (6) aiding and abetting racketeering. Giant Tiger argues that each alleged predicate act fails as a matter of law. The Court

discusses each below.

First, the Plaintiffs cannot premise their federal RICO claim on the alleged securities fraud. The Amended Complaint alleges that Giant Tiger engaged in securities fraud through the unregistered sale of membership interests in RUC14: "The TA Partners/Giant Tiger Enterprise has raised millions of dollars by selling unregistered and unexempt securities in flagrant disregard for American securities law. Richard Zhang and Giant Tiger raised funds through selling unregistered securities in the RUC14 Playa private offering." (Am. Compl. ¶ 10; *see also id.* ¶ 120 ("[T]here has been no Regulation D filings for [ ] the . . . RUC14 private offering[ ]".) It further alleges that Giant Tiger committed securities fraud by "intentionally providing false and misleading statements to Plaintiffs," (*id.* ¶ 115), to promote the RUC14 membership interest at a favorable price, (*id.* ¶ 119).

While any securities fraud premised on Giant Tiger's misrepresentations is barred by the merger clause for the reasons discussed above, the entire securities fraud claim is also independently barred by the Private Securities Litigation Reform Act (PSLRA). The PSLRA provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish" a RICO violation. 18 U.S.C. § 1964(c). *But see id.* (providing that this prohibition is lifted if the defendant is "criminally convicted in connection with the fraud"). In other

words, the PSLRA prevents a plaintiff from premising a RICO claim on securities fraud, as the Plaintiffs here seek to do.

The Plaintiffs' attempts to circumvent the PSLRA bar are unavailing. They puzzlingly argue in their response brief that, "although the Amended Complaint states otherwise, a further review confirms that the membership interests the Plaintiffs purchased were not 'securities.'" (Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 17.) Putting aside the fact that the Plaintiffs cannot amend their allegations through a response brief and that they continue to maintain their securities fraud allegations for purposes of Georgia's RICO Act, the Plaintiffs' argument is nonsensical on the merits as well. Under the Securities Act, "an investment contract [i]s a scheme in which a person (1) invests money, (2) in a common enterprise, and (3) is led to expect profits solely from the efforts of the promoter or a third party." *Intelligent Inv. Int'l LLC v. Fu*, 2019 WL 1281204, at *5 (N.D. Ga. Mar. 20, 2019) (citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946)). The Plaintiffs argue that the third prong is not satisfied because Giant Tiger was neither the investment promoter nor a third party tasked with generating the profits. (Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 17–19 (arguing that Richard Zhang was the promoter and that Johnny Lu, Larry Lu, and TA Fund II were the third parties).) But that is irrelevant since the Plaintiffs nevertheless allege that were led to expect profits from *someone other than themselves*

(third parties), (Am. Compl. ¶¶ 100, 4), which is all that is necessary to satisfy the third prong. *See Howey*, 328 U.S. at 298. Because the Plaintiffs also clearly allege the first two prongs (money invested in a common enterprise), (*see, e.g.*, Am. Compl. ¶¶ 98, 8), the Court finds that the membership interests otherwise qualify as securities, (*see Intelligent*, 2019 WL 1281204, at *5–7 (holding the same on similar facts). Therefore, the PSLRA bars the Plaintiffs from relying on their alleged securities fraud as predicate acts.

Second, the Plaintiffs' alleged predicate acts of mail and wire fraud are also barred by the PSLRA. Courts apply the PSLRA bar not only to direct allegations of securities fraud but also to allegations of other offenses that are nonetheless "actionable" as securities fraud. *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999); *see also Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014) ([C]ourts have applied the RICO [PSLRA] bar in § 1964(c) broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act . . ."). Under Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, fraud "in connection with the purchase or sale of any security" is actionable as securities fraud. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Generally, conduct undertaken "in furtherance" of the "overarching scheme to commit securities fraud" is conduct undertaken "in connection with the purchase or sale of" securities. *See Licht*, 567 F. App'x at 693; *see also Bald Eagle*, 189 F.3d at 330 ("[C]onduct

undertaken to keep a securities fraud [ ] scheme alive is conduct undertaken in connection with the purchase and sale of securities.").

Here, all the mail and wire fraud alleged occurred in connection with the sale of securities (the RUC14 membership interests) and "in furtherance of" an "overarching scheme to commit securities fraud." *See Licht*, 567 F. App'x 689, 693 (11th Cir. 2014) (finding the defendants' alleged predicate acts of mail and wire fraud barred by the PSLRA). In describing the overarching TA Partners/Giant Tiger scheme, the Amended Complaint alleges that the enterprise participants used "sham investment agreements" and "intentional lies" about the promise of "large investment returns" to "steal the investors' money." (Am. Compl. ¶ 100.) The alleged instances of mail and wire fraud all fall under this scheme.[10] (*See, e.g., id.* ¶¶ 109, 114 (noting the enterprise participants relied on interstate wire communications to effectuate the investment scheme); *id.* ¶¶ 100, 110–12, 117–19 (noting the enterprise participants electronically sent false investment promotional materials and information across state lines to obtain the Plaintiffs' investments); *id.* ¶¶ 102, 113 (same regarding fraudulent tax returns and other investment updates).) Moreover, the Court is not aware of and the Plaintiffs do not draw attention to any other particular mail or wire fraud allegations they believe fall outside the

---

[10] Most of these alleged instances of mail and wire fraud are also independently barred by the RUC14 merger clause since they relate to the promotional materials that Giant Tiger circulated to investors.

investment scheme. Therefore, the PSLRA bars the Plaintiffs from relying on the alleged mail and wire fraud as predicate acts.

Third, bank fraud cannot serve as a predicate act for the Plaintiffs because they do not have standing to bring a bank fraud claim. *See Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1234 (S.D. Fla. 2008). The Amended Complaint alleges bank fraud when "Johnny Lu and Larry Liu used the[ir] [$13.5 million mortgage] loan to pay personal debts." (Am. Compl. ¶ 71.) But that alleged bank fraud did not proximately cause the Plaintiffs' injuries, as required by the standing inquiry. *See Ward*, 617 F. Supp. 2d at 1234 ("Financial institution fraud may have allowed for the receipt of the funds, but that merely created access to the instrumentality that Defendants later employed to injure Plaintiffs. Financial institution fraud was not the proximate cause of any alleged injury."); *Chi v. Mastercard Int'l, Inc.*, 2014 WL 5019917, at *3 (N.D. Ga. Oct. 7, 2014) (finding that only financial institutions have standing to allege bank fraud as a predicate act under RICO). The Plaintiffs do not contest this point.

Fourth, tax fraud in violation of 26 U.S.C. § 7434 cannot serve as a predicate act because it is not enumerated as an allowable predicate act under the RICO Act's definition of "racketeering activity." 18 U.S.C. § 1961. The Plaintiffs also do not contest this point.

Fifth, money laundering cannot serve as a predicate act as to Giant Tiger. As best the Court can tell, the Amended Complaint does not allege that Giant Tiger laundered money, and the Plaintiffs' response brief does not even identify any allegations that Giant Tiger has done so. (*See* Reply Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 5 [Doc. 65]; *see also id.* at 6 ("While Plaintiffs claim . . . that Giant Tiger received the $516,000 capital raising fee, the Amended Complaint plainly alleges that *Richard Zhang* received those funds." (citation omitted).)

Sixth, aiding and abetting racketeering also cannot serve as a predicate act as to Giant Tiger. The predicate acts of aiding and abetting securities fraud, mail fraud, wire fraud, bank fraud, and tax fraud fail for the same reasons as those described above. Regarding money laundering, the Plaintiffs contend that Giant Tiger aided and abetted "Johnny Lu and Larry Liu's money laundering scheme," including by "approv[ing] the recording of a disbursement of $9,400,000" to Johnny Lu's and Larry Liu's personal accounts. (*See* Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 20–21.) But the Amended Complaint alleges that Zhang, not Giant Tiger, recorded the disbursement. (Am. Compl. ¶ 128(a).) Therefore, the Plaintiffs cannot attach Giant Tiger to this money laundering predicate act.

Having considered each alleged predicate act and found none (let alone two) are sufficiently alleged, the Court hereby grants dismissal of the federal

RICO claim as to Giant Tiger. The Court need not reach the enterprise or pattern elements as a result.

### 5. Federal RICO Conspiracy (Count II)

A plaintiff can establish a RICO conspiracy claim by "(1) showing that the defendant agreed to the overall objective of the conspiracy or (2) showing that the defendant agreed to commit two predicate acts." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1201 (11th Cir. 2025) (citation modified). In either case, a plaintiff "need not offer direct evidence of a RICO agreement." *Id.* (citations omitted). Rather, the conspiracy "may be inferred from the 'conduct of the alleged participants *or* from circumstantial evidence of a scheme.'" *Id.* at 1202 (quoting *Cisneros.*, 972 F.3d at 1220). A plaintiff also need not state a claim for a substantive RICO violation in order to state a claim for a RICO conspiracy. *Id.* at 1203. But the conspiracy allegations must "add[ ] something" beyond the substantive RICO allegations. *See id.* ("Only where a RICO conspiracy claim 'adds nothing' to a substantive RICO allegation should the conspiracy claim be dismissed outright.").

Giant Tiger argues that this claim fails as a matter of law because it relies entirely on conclusory allegations—without more—of Giant Tiger's involvement in the conspiracy. (*See* Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 17.) Giant Tiger also argues that it could not have been part of the conspiracy since Johnny Lu and Larry Liu also misappropriated Giant Tiger's

$200,000 investment in RUC14 and forged Zhang's signature. (*See* Reply Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 7–8.)

The Amended Complaint fails to state a federal RICO conspiracy claim against Giant Tiger. *See* 18 U.S.C. § 1962(d). Plaintiffs make conclusory allegations that Defendants conspired to violate federal RICO, *see* Am. Compl. ¶¶ 136–38, but offer no supporting detail. "[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Wade Park Land Holdings, LLC v. Kalikow*, 522 F. Supp. 3d 1341, 1353 (N.D. Ga. 2021) (quoting *Rogers v. Nacchio,* 241 F. App'x 602, 609 (11th Cir. 2007)). The Amended Complaint fails to state a plausible claim that Giant Tiger entered into a conspiracy to steal its own money.

### 6. Fraudulent Transfer (Count X)

The Court dismisses the fraudulent transfer claim as to Defendant Giant Tiger. As Giant Tiger points out, the Plaintiffs do not allege any fraudulent transfer between Giant Tiger and any other person or entity. (Reply Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 9–10.) While the Court is sympathetic to the Plaintiffs argument that any fraudulent transfers are "inherently complex and secretive [in] nature" and are difficult to decipher prior to discovery, (Pls.' Resp. Br. in Opp'n to Def. Giant Tiger's Mot. to Dismiss, at 28), federal pleading standards nonetheless require the Plaintiffs

to allege at least some facts that support the existence of a fraudulent transfer to or from Giant Tiger. The Plaintiffs do not provide any factual allegations here; they only state in a conclusory fashion that the "Defendants" as a collective "have engaged in a series of acts of fraud, forgery, illicit fraudulent transfers, commingling and misuse of funds, and conversion of Plaintiff's funds for Defendants personal use." (Am. Compl. ¶ 198.) That allegation is not sufficient.

### 7. Georgia RICO & Georgia RICO Conspiracy (Count XI)

A defendant may be held liable for a Georgia RICO violation in one of three ways under O.C.G.A. § 16-14-4. First, subsection (a) makes it "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). Second, subsection (b) makes it "unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." O.C.G.A. § 16-14-4(b). Third, subsection (c) makes it "unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b)." O.C.G.A. § 16-14-4(c). Roughly stated, Georgia law prohibits (a) acquiring property through racketeering, (b) engaging in racketeering through an enterprise, and

(c) conspiring to do either of the first two activities. The Court will refer to the first two types of violations collectively as substantive "Georgia RICO" violations and refer to the third type as a "Georgia RICO conspiracy" violation. The Plaintiffs allege all three types of violations. (Am. Compl. ¶¶ 204–06.)

### a. Georgia RICO.

The Court holds that the Plaintiffs fail to state a claim for a substantive Georgia RICO violation as to Giant Tiger under either O.C.G.A. § 16-14-4(a) or O.C.G.A. § 16-14-4(b). Both types of violations require a "pattern of racketeering activity," which includes "[e]ngaging in at least two acts of racketeering activity." O.C.G.A. § 16-14-3(4)(A). For the reasons below, the Plaintiffs have failed to allege at least two predicate acts.

The Amended Complaint alleges the following predicate acts for their Georgia RICO claim: (1) theft in violation of O.C.G.A. §§ 16-8-2 to 16-8-4, 16-8-7; (2) money laundering in violation of O.C.G.A. § 16-14-4 (and presumably federal money laundering laws); (3) mail and wire fraud in violation of O.C.G.A. § 16-14-3(5)(C) and 18 U.S.C. §§ 1341, 1343; and (4) securities fraud in violation of O.C.G.A. § 10-5-50 (and presumably O.C.G.A. § 10-5-20 and federal securities law). (Am. Compl. ¶¶ 209–11.)

As an initial matter, theft, money laundering, and mail and wire fraud cannot serve as predicate acts as to Giant Tiger. Regarding theft and money laundering, the Amended Complaint contains no allegations connecting Giant

Tiger to those acts; rather, it alleges that others such as Richard Zhang, Johnny Lu, and Larry Liu took and misappropriated the Plaintiffs' funds. (*See* Am. Compl. ¶ 79 (regarding Zhang's alleged theft by taking a $516,000 capital raising fee from investor funds); *id.* ¶¶ 83, 85–86 (regarding Johnny Lu and Larry Liu's alleged theft by misappropriating investor funds for personal use).) Regarding mail and wire fraud, the RUC14 merger clause bars those predicate acts: the merger clause clearly bars any mail or wire fraud based on noncontractual representations or omissions related to the RUC14 Operating Agreement (for the reasons above), and the Court is not aware of any other mail or wire fraud allegations that are pleaded with particularity as to Giant Tiger.

The Court finds that the Plaintiffs' remaining allegations of securities fraud are not sufficient to save their Georgia RICO claim. First, to the extent the Plaintiffs allege securities fraud via fraudulent representations or omission related to the RUC14 Operating Agreement, the RUC14 merger clause once again precludes such fraud for RICO purposes. Second, although the Amended Complaint contains allegations of securities fraud via the sale of unregistered securities (RUC14 membership interests), that is only one predicate act. One predicate act is insufficient. The Plaintiffs argue in their response brief that a second predicate act exists by way of the Defendants' separate scheme with RUC13 Pistoria LLC. (Pls.' Reps. Br. in Opp'n to Def. Giant Tiger's Mot. to

Dismiss, at 31.) But Giant Tiger is correct that the Plaintiffs do not identify with particularity any role that Giant Tiger played in the supposed RUC13 scheme. (*See* Br. in Supp. of Def. Giant Tiger's Mot. to Dismiss, at 15 n.4 (citing Am. Compl. ¶¶ 65–66).) Therefore, the Court dismisses the Georgia RICO claim (Count XI) as to O.C.G.A. § 16-14-4(a) and O.C.G.A. § 16-14-4(b).

### b. Georgia RICO Conspiracy.

Finally, and like their federal RICO conspiracy claim, Plaintiffs offer no justification for their Georgia RICO conspiracy claim other than the same unfounded assertions offered for their substantive Georgia RICO claim.

### IV.   Conclusion

For the reasons set forth above, Plaintiffs' Motion for Alternative Service [Doc. 33] is DENIED. Defendant Giant Tiger LLC's Motion to Dismiss [Doc. 40] is GRANTED. Defendant Giant Tiger's Motion for Reconsideration [Doc. 77] is DENIED as moot. Defendants' TA Partners, LLC, Chienshen (Johnny) Lu's, and Yaojun (Larry) Liu's Motion to Dismiss [Doc. 42] is DENIED as moot. Defendants Xin Zheng and Hsing-We Ho's Motion to Dismiss [Doc. 43] is DENIED as moot. The Plaintiffs are ordered to show cause within 10 days from the date of this Order why the Complaint and Amended Complaint should not be dismissed as to all unserved Defendants pursuant to Rule 4(m).

SO ORDERED, this ___28th___ day of August, 2025.

THOMAS W. THRASH, JR.
United States District Judge